**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:23-cv-23306-LEIBOWITZ**

**CHRISTELLE MAZILE,**

 *Plaintiff,*

*v.*

**LARKIN UNIVERSITY CORP. and
EXAMSOFT WORLDWIDE, INC.,**

 *Defendants.*

_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court on Defendants' Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss Amended Complaint (the "Motion"), filed on May 9, 2024. [ECF No. 34].  Being fully advised, the Motion [**ECF No. 34**] is **GRANTED.**

## I. BACKGROUND

Plaintiff Christelle Mazile attended Defendant Larkin University Corp. ("Larkin") to obtain a doctorate degree in their pharmaceutical program, with an expected graduation date of May 2021.  [Compl. ¶ 11].  Mazile describes herself as an "African American female with diagnosed anxiety and ADHD."  [*Id.*]

Larkin is a Florida non-profit corporation engaged in providing higher education services, and Larkin received forgivable loans from the federal government via the Paycheck Protection Program ("PPP").  [*Id.* ¶¶ 2-3, 95c].

Defendant ExamSoft Worldwide, Inc. ("ExamSoft"), is a for-profit Texas corporation that creates testing software that Larkin used to administer remote examinations for its classes.  [*Id.* ¶¶ 2-3].

In the Spring of 2020, Mazile was scheduled to take her final examinations at Larkin in three classes. [*Id.* ¶ 13]. She initially took examinations for these classes in person (without using ExamSoft software) but failed to achieve passing grades. [*Id.* ¶¶ 16, 18]. As a result, Larkin required her to take remediation examinations. [*Id.* ¶¶ 20]. At the time of the remediation testing and due to the COVID-19 pandemic, Larkin arranged to have their students take examinations remotely by using ExamSoft software. [*Id.* ¶ 15]. The ExamSoft software created "a continuous audio and video recording of the exam-taker using both webcam and screen capture," and after the exam was completed the footage was uploaded to ExamSoft for review by an artificial intelligence system to identify any potential irregular behavior. [*Id.* ¶ 25]. In May 2020, Plaintiff took these examinations remotely using ExamSoft; she was not given an option by Larkin to take her examinations in any other manner.[1] [*Id.* ¶¶ 21-24, 29]. After taking her remediation exams, ExamSoft "flagged" Mazile for cheating, and she was expelled by Larkin as a result. [*Id.* ¶¶ 30-31].

To take her remote examinations using ExamSoft, Plaintiff signed an ExamSoft "clickwrap" agreement, known as the End User Licensing Agreement ("EULA"), by checking a box on her computer screen. [ECF No. 36 at 7]. The EULA included a clause mandating binding arbitration for "any claim, demand, dispute or controversy of any kind or nature between the parties hereto arising out of or relating to this Agreement, its construction, interpretation, performance or alleged breach" that is "not otherwise settled by agreement of the parties" (the "Arbitration Clause"). [Compl., Ex. C at 36]. The Arbitration Clause included a choice-of-law clause

---

[1] In her Complaint, Mazile claims to have taken the same remediation exams at different times. At some points she claims they occurred in May 2020, and at other points she claims they took place in May 2021. [Compl. ¶¶ 21, 29, 30, 39, 50]. Because she admits in her response to Defendants' Motion that the examinations occurred in May 2020, this Court will assume as such. [*See* ECF No. 36 at 16].

specifying that Texas law applied to any dispute "without regard to its conflict of laws rules." [*Id.*].

As part of the expulsion determination, Mazile alleges that Larkin refused to allow her to retest, in person or otherwise, and refused to "consider or investigate her claims that the [ExamSoft] Software had a discriminatory effect based on her race, as well as her ADHD and anxiety." [*Id.* ¶ 32]. Mazile points out that ExamSoft had drawn criticism "as early as December of 2020," when six United States Senators wrote a letter to ExamSoft expressing their concerns that the ExamSoft software was accusing students of color and those with disabilities of cheating disproportionately. [*Id.*, Ex. A at 19-22]. Mazile also alleges that "[n]umerous other articles, stories, or publications have been made which evidence a clear pattern of the [ExamSoft] Software, and its undoubted discriminatory effect on African America (sic) students, and those with disabilities." [*Id.* ¶ 28].

Mazile's Amended Complaint contains seven counts. Four counts are against Larkin, alleging discrimination and failure-to-accommodate claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). Three counts are against ExamSoft, alleging intentional and negligent misrepresentation and breach of warranty claims under state law. [ECF No. 16, Compl. ¶¶ 33-104].

## II.     The Motion to Compel Arbitration by ExamSoft is GRANTED.

As part of the Motion, ExamSoft moved to compel arbitration for the claims against it, claiming that the Federal Arbitration Act ("FAA") requires Plaintiff to submit her claims against ExamSoft to binding arbitration. [ECF No. 34 at 3]. For the reasons that follow, this Court agrees with ExamSoft; these three counts must be decided in arbitration.

### A.  Legal Standard

Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2.  "Confronted with a facially valid arbitration agreement, district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Calcaterra v. Baptist Health S. Fla., Inc.*, No. 1:23-CV-20364-KMM, 2024 WL 2109349, at *2 (S.D. Fla. May 9, 2024) (emphasis in original); 9 U.S.C. § 3.  "A motion to compel arbitration is treated generally as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Calcaterra*, 2024 WL 2109349, at *2 (citing *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526 at *2 n.3 (S.D. Fla. Mar. 7, 2013)).  Thus, a court "may consider matters outside the four corners of the complaint." *Id*. (citing *Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009)). Courts should only compel arbitration if (a) the agreement is enforceable under "ordinary state-law contract principles" and (b) the claims before the court fall within the scope of that agreement. *Lambert v. Signature Healthcare*, LLC, No. 19-11900, 2022 WL 2571959, at *4 (11th Cir. July 8, 2022).

### B.  Discussion

In diversity actions, this Court is required to apply the forum state's conflict-of-law rules. *Doe v. Roe*, 500 F. Supp. 3d 1319, 1324 (S.D. Fla. 2020), *aff'd*, No. 20-14456, 2022 WL 1447378 (11th Cir. May 9, 2022) (citing *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In Florida, "[w]hen a false conflict exists, the law of the forum state–Florida–applies." *Id*. (citing *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir. 1983)).  A "false conflict exists

4

where the laws of the interested jurisdictions would produce the same outcome[.]" *Id.* (quotation marks omitted).

Mazile claims that both the choice-of-law provision and the Arbitration Clause are unconscionable. [*See* ECF No. 36 at 5]. This Court will review the substantive law of unconscionability in both Florida and Texas to determine whether there is a "false conflict," such that both courts in both states would "produce the same outcome" when deciding whether the choice-of-law provision and the Arbitration Clause in the EULA are unconscionable. If so, the Court will apply Florida law.

### 1. Substantive Law - Unconscionability

#### <u>Florida Law</u>

Under Florida law, "[w]hether an arbitration provision is unconscionable is a question of state law and therefore the provision is interpreted according to state law rules of contract construction." *Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1339 (S.D. Fla. 2022). "Both procedural unconscionability and substantive unconscionability must exist before the provision is unenforceable." *Id.* (citing *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989)).

"Procedural unconscionability focuses on (1) the manner in which the contract was entered into; (2) whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract; and (4) whether he or she had a reasonable opportunity to understand the terms of the contract." *Valiente*, 645 F. Supp. 3d at 1339 (internal quotations omitted). Substantive unconscionability focuses on the "unreasonableness of the terms" in the "agreement itself." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157-58 (Fla. 2014); *Solis v. Am. Express Nat'l Bank*, No. 5:23-CV-208-JSM-PRL, 2023 WL 4474322, at *2 (M.D. Fla. July 11, 2023), *report and*

*recommendation adopted*, No. 5:23-CV-208-JSM-PRL, 2023 WL 4831307 (M.D. Fla. July 28, 2023).  However, while both procedural and substantive unconscionability "must be established to avoid enforcement of the terms within an arbitration agreement[,] . . . . they need not be present to the same degree."  *Basulto*, 141 So. 3d at 1159 (adopting a "sliding scale" approach for unconscionability).

Here, Mazile signed the EULA by checking a box before taking her remote exams.  In order to take her exams, which were required for graduation, she had to agree to the terms provided by ExamSoft in the Arbitration Clause, with no effective negotiating power to change the terms of the software's use.  [ECF No. 37 at 7].  Plaintiff, therefore, had little meaningful choice when she took her final examinations to not sign the EULA-- because if she did not agree to the terms as presented to her, she would certainly fail to graduate after she had spent over $135,000 in pursuit of her degree.  [Compl. ¶ 12].  Thus, it is clear to this Court that the second and third *Valiente* factors of procedural unconscionability are present.

However, the first and fourth *Valiente* factors do not lead to a finding of procedural unconscionability.  The Plaintiff had every opportunity to understand the clear terms of the Arbitration Clause.  The clause, as Plaintiff admits, was "in the same font, text, color, and size as the rest of the agreement" and was clearly titled "GOVERNING LAW AND ARBITRATION[.]" [ECF No. 37 at 7].  Plaintiff had a duty to read the contract, which was less than four pages, before she agreed to it, and because the Arbitration Clause was plainly available for her to read, and not hidden in the contract, this Court does not find that it is procedurally unconscionable. *See Valiente*, 645 F. Supp. 3d at 1340-41.

Clickwrap agreements are generally valid and enforceable in Florida, further supporting the Court's conclusion that the EULA is not procedurally unconscionable even though Plaintiff

had little choice or bargaining opportunity before signing it.  *See, e.g., Matter of Chaves*, No. 22-81648-CIV, 2024 WL 718033, at *8 (S.D. Fla. Feb. 9, 2024) (finding clickwrap agreements are generally upheld in Florida); *Salco Distributors, LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006).  While Plaintiff is correct that the EULA was likely one of adhesion, which is a "standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms," *Senior Servs. of Palm Beach LLC v. ABCSP Inc.*, No. 12-80226-CIV, 2012 WL 2054971, at *4 (S.D. Fla. June 7, 2012), adhesion contracts are not "*per se* unconscionable[,]" *Joyce v. Forest River, Inc.*, No. 23-CV-81262, 2024 WL 517990, at *3 (S.D. Fla. Feb. 9, 2024) (holding that an adhesion contract is unconscionable only where more factors are present, such as deception).

Thus, despite the presence of two of the *Valiente* factors necessary for procedural unconscionability, the EULA is not strongly procedurally unconscionable.  *See Valiente*, 645 F.Supp.3d at 1339 (holding that a clickwrap arbitration agreement was enforceable where there was an opt-out clause, Plaintiff had a duty to read the terms and conditions, and clause was not hidden in fine print).

While substantive unconscionability is a vague standard, because arbitration agreements have been upheld consistently in Florida, and are expressly supported by federal policy, there is no evidence that the Arbitration Clause is substantively unconscionable.  *See Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1340 (S.D. Fla. 2018); *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1325 (S.D. Fla. 2004); *Laizure v. Avante at Leesburg, Inc.*, 44 So. 3d 1254, 1257 (Fla. Dist. Ct. App. 2010), *approved*, 109 So. 3d 752 (Fla. 2013); *see generally AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Mazile states incorrectly that the Arbitration Clause's requirement that she waive any class action right creates substantive unconscionability. *See AT&T*

*Mobility*, 563 U.S. at 352 (finding that the FAA preempted a state's judicial rule banning class action waivers in arbitration clauses); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1232 (11th Cir. 2012).

Additionally, Mazile has offered no explanation (beyond a conclusory statement) as to why applying Texas law would be substantively unconscionable.[2]  Choice-of-law clauses are only held unreasonable and unenforceable when "(1) their formation was induced by fraud or overreaching; (2) the plaintiff would effectively be deprived of its day in court because of the inconvenience and unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy."  *Xena Invs., Ltd. v. Magnum Fund Mgmt. Ltd.*, 726 F.3d 1278, 1284–85 (11th Cir. 2013). Clearly, the choice-of-law clause here does not meet this test for unreasonableness because (1) Mazile does not allege fraud in the formation of the EULA; (2) Mazile would not be deprived of her day in Court if Texas law applies as the application of Texas law itself does not forbid the Plaintiff from bringing any claim; (3) Texas law is not fundamentally unfair on unconscionability and closely mirrors Florida law (discussed below); and (4) Mazile has identified no strong public policy that would counsel this Court against applying Texas law.

Because Mazile has insufficiently proven procedural unconscionability, and because there is no showing of substantive unconscionability, under Florida law, both clauses would be enforced and the Motion to Compel Arbitration would therefore be granted.  However, this Court must also analyze Texas law on unconscionability to determine whether a false conflict exists.

---

[2] To show substantive unconscionability under Florida law, Mazile has to show that it would be unreasonable for this Court to apply *Texas* law here.

**Texas Law**

Similar to Florida, Texas courts analyze contractual unconscionability by determining both procedural and substantive unconscionability.  *Bongalis-Royer v. RJ Worldwide, LLC*, No. 4:14-CV-330, 2015 WL 12778846, at *9 (E.D. Tex. July 16, 2015).  To do this, Texas courts examine "(1) the entire atmosphere in which the agreement was made; (2) alternatives, if any, available to the parties at the time of formation; (3) the non-bargaining ability of a party; (4) whether the contract was illegal or against public policy; (5) and whether it is oppressive or unreasonable." *Id*.; *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 798 (Tex. App. 2013).  Additionally, and like Florida, clickwrap agreements are generally valid and enforceable in Texas, regardless of the signatory's purported lack of choice.  *See, e.g., Bongalis-Royer*, 2015 WL 12778846 at *9; *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 782 (N.D. Tex. 2006); *StubHub, Inc. v. Ball*, 676 S.W.3d 193, 200 (Tex. App. 2023) ("Texas state and federal courts have recognized the validity of clickwrap agreements.").

Just as above, even though the atmosphere in which the agreement was made would suggest some level of procedural unconscionability, *supra*, the facts are insufficient to create strong procedural or substantive unconscionability.  Arbitration clauses and choice of law provisions are neither illegal nor against public policy (in fact, as discussed, federal law supports arbitration clauses) and the clickwrap terms were not "unfair or oppressive." *Johnson v. Sw. Recovery Servs. Inc.*, No. 3:22-CV-242-X-BH, 2023 WL 1944127, at *9 (N.D. Tex. Jan. 24, 2023), *report and recommendation adopted*, No. 3:22-CV-0242-X-BH, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023); *supra*.

Thus, because both Florida and Texas law would lead to the same conclusion that the EULA is not unconscionable, there is a "false conflict" between Texas and Florida law for the

enforceability of the Arbitration Clause.  This Court must therefore apply Florida law and, as discussed above, finds that the Arbitration Clause is enforceable.  Any claims that properly fall within the scope of the Arbitration Clause should be heard in arbitration.

### 2. Scope of the Arbitration Clause

The Arbitration Clause in the EULA provides that any unsettled claim "shall be resolved by binding bi-lateral arbitration[.]"  [ECF No. 16 at 36 § 11].  A "claim" is "any claim, demand, dispute or controversy of any kind or nature between the parties hereto arising out of or relating to this Agreement, its construction, interpretation, performance or alleged breach."  [*Id*.].  Because this Court found that the choice of law clause in the Arbitration Clause is enforceable, Texas law applies to the determination of whether the Plaintiff's claims fall under the Arbitration Clause.

Under Texas law, a broad arbitration clause is one "where the language of the clause requires arbitration of any dispute that arises out of or relates to 'the agreement, or disputes that are in connection with the agreement."  *Elkjer v. Scheef & Stone, L.L.P.*, 8 F. Supp. 3d 845, 855 (N.D. Tex. 2014).  Where there is a broad arbitration clause, for arbitration to be compelled over certain claims, those claims need only "touch" issues covered by the arbitration clause.  *See id*.

The Arbitration Clause here is broad because it encompasses "any claim . . . arising out of or relating to this Agreement[.]"  [ECF No. 16 at 36 § 11].  Thus, any claim that relates to or "touches" the Agreement is covered by the clause and should be heard by an arbitral body, not a federal court.  Here, the three claims against ExamSoft, Count IV (intentional misrepresentation), Count V (negligent misrepresentation), and Count VI (breach of warranty of fitness for a particular purpose), all relate to the agreement which Mazile signed because they concern her examinations for which she had to sign the EULA.

In Count IV, Mazile states that she "acted on these, and other representations made by ExamSoft as to the efficacy of its [ExamSoft] Software, or nondiscriminatory impact thereof, in using the EM Software *to take her remediation examinations*."  [ECF No. 1 ¶ 74 (emphasis added)].   In Count V, Mazile states that she "was injured as a direct and proximate result, as she was in fact discriminated upon based on race and/or disability when using the [ExamSoft] Software[.]" [*Id*. ¶ 81].  In Count VI she states "Plaintiff and ExamSoft were in privity of contract, by virtue of [the EULA.]"  [*Id*. ¶ 81].

As Mazile admits, all of these claims clearly relate to or arise out of the Arbitration Clause. [*See* ECF No. 36 at 2-3; Compl. ¶ 8 ("Plaintiff's claims arise directly out of ExamSoft's activities in the state of Florida . . . the use of [the ExamSoft software] caused Plaintiff to be expelled.").]. These claims are only actionable because Mazile signed the EULA and decided to take the examinations via ExamSoft.  Therefore, all of these claims should be heard in arbitration.  The Motion to Compel Arbitration as to all counts against ExamSoft (Counts IV, V, VI) is **GRANTED.**

## III.   The Motion to Dismiss by Larkin is GRANTED.

Defendant Larkin moves to dismiss Plaintiff's claims against it under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims.  [ECF No. 34 at 5].  Specifically, Larkin argues that (1) it is not a state actor and therefore not amenable to suit under 42 U.S.C. § 1983, (2) Plaintiff fails to properly plead discrimination under the ADA because based on the facts presented in the Amended Complaint, Larkin could not have known of the possible discriminatory effect of ExamSoft, (3) Plaintiff fails to properly plead failure to accommodate under the ADA because Plaintiff did not demand an accommodation, and (4) the legislative history of Section 504 of the RA implies that Larkin cannot be sued under the Act.  [*Id*. at 6-13].  For the reasons that follow, the Motion is GRANTED.

### A. Legal Standard

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotations omitted)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiffs receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.

A court considering a 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits—but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted). "[D]etermining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (alterations accepted) (quoting *Iqbal*, 556 U.S. at 679).

### B.  Discussion

#### Count I – 42 U.S.C. § 1983

Mazile alleges Larkin violated Plaintiff's Equal Protection rights under the Fourteenth Amendment and brings a claim under 42 U.S.C. § 1983.  [Compl. ¶ 38].  Count I fails to state a claim and is plainly futile.  Section 1983, the great civil rights statute of post-Civil War American law, was passed "to deter *state actors* from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (emphasis added).  Larkin is a private university, *id.* ¶ 2, and Plaintiff presents no reason that it should be considered a "state actor" subjecting it to suit under § 1983.

A private party can be considered a state actor in three rare circumstances: "(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test").  *Charles v. Johnson*, 18 F.4th 686, 694 (11th Cir. 2021) (quoting *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001)).  None of these circumstances are present here.

Mazile argues that Larkin is a state actor because it (1) performs a primarily and traditionally state function – education, and (2) in the alternative, there is "joint action or a nexus between the State and Larkin University because Larkin University accepts federal funds.  [Compl.

13

¶¶ 34-35, 37].  These arguments are without merit, and Mazile cites no legal authority holding a private university to be a state actor.[3]

Courts have consistently held that private universities are *not* state actors for purposes of § 1983.  *See Andela v. Univ. of Miami*, 461 F. App'x 832, 836 (11th Cir. 2012); *Driessen v. Univ. of Miami Sch. of L. Child. & Youth L. Clinic*, No. 1:20-CV-22559-UU, 2020 WL 13368589, at *2 (S.D. Fla. June 23, 2020), *aff'd* 835 Fed.Appx. 489 (11th Cir. 2020); *Driessen v. Univ. of Miami Sch. of L. Child. & Youth L. Clinic*, No. 19-21224-CIV, 2019 WL 8895219, at *2 (S.D. Fla. Sept. 24, 2019); *Althiabat v. Howard Univ.*, 76 F. Supp. 3d 194, 197 (D.D.C. 2014).  Moreover, the receipt of federal funds "do[es] not elevate [] private educational institutions to the status of 'state actor.'"  *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 239 (D.D.C. 2007); *see Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019); *Siyu Yang v. Ardizzone*, 540 F. Supp. 3d 372, 380 (W.D.N.Y. 2021), *aff'd sub nom. Yang v. Eastman Sch. of Music*, No. 21-1482-CV, 2022 WL 1040418 (2d Cir. Apr. 7, 2022) ("[A] private entity does not become a state actor for purposes of § 1983 merely on the basis of the private entity's creation, funding, licensing, or regulation by the government.") (citing *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).  Plaintiff is incorrect that Larkin's receipt of federal funds intertwines it with the government such that it has become a state actor.

Having identified no possible way for Larkin to be considered a state actor, Mazile cannot establish that it is amenable to suit under § 1983.  Count I is **DISMISSED with prejudice**.

---

[3] The Defendant cites *Braden v. Univ. of Pittsburgh*, 552 F. 2d 948 (3d Cir. 1977) and *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94 (3d Cir. 1984) for the proposition that courts have held that universities are state actors.  [*See* ECF No. 36 at 11].  However, the University of Pittsburgh is a "state-related" university that received "a massive infusion of moneys" from the Commonwealth of Pennsylvania.  *Braden*, 552 F. 2d at 959.  Larkin is a private university, and there is no allegation that it received anything close to a "massive infusion of moneys" from the State of Florida.  These cases are inapposite.

**Count II – ADA Discrimination**

Mazile's next claim against Larkin under the ADA for discrimination is based on her diagnosis of ADHD and anxiety.  Even if taken as true, however, Count II is so bereft of information that it cannot amount to a discrimination claim under the ADA.

Under the ADA, no employer "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Samson v. Fed. Exp. Corp.*, 746 F.3d 1196, 1200 (11th Cir. 2014).  "To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that [s]he: (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of h[er] disability." *Samson v. Fed. Exp. Corp*., 746 F.3d 1196 (11th Cir. 2014).

Taking the Plaintiff's assertions as true, Plaintiff properly pleads that she is disabled and that Larkin knew of the discrimination.  [ECF No. 16 ¶¶ 47, 50].  Thus, the first prong of the test is met.

To be a "qualified individual" under the ADA, the Plaintiff must show that "she can meet the essential eligibility requirements for participation in the program, either with or without reasonable accommodations."  *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2016); *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).  Based on Mazile's allegations, she is a "qualified individual" because passing the exams was an essential requirement of the pharmaceutical program, the use of ExamSoft impeded her ability to succeed on the exams, and she identifies possible accommodations which could have aided her.  [Compl. ¶¶ 32, 63].

However, Mazile's allegations cannot establish that Larkin discriminated against her *because of* her disability, and thus, her complaint does not properly plead the third prong of ADA discrimination.  Larkin's use of ExamSoft for examinations during COVID-19 was for *all* exams, regardless of the student.  [*See* Compl. ¶ 22].  Plaintiff claims in both her Amended Complaint and her response to the Motion to Dismiss that the use of ExamSoft for all exams was discriminatory as to her because Larkin "had actual or constructive knowledge that the [ExamSoft software] had a discriminatory effect on individuals who has certain learning disabilities [which was] gleaned from a highly publicized open letter from congress[.]"  [Compl. ¶¶ 52-53; ECF No. 36 at 15-16 ("Plaintiff further avers that University knew that the [ExamSoft] Software was detrimental, and its choice to utilize the same amounts to circumstantial evidence that University intended to discriminate against individuals with ADHD, anxiety, and other disability such as Plaintiff.")].

The only possible source of this knowledge that Plaintiff identifies is the letter to ExamSoft from the United States Senators, which was published in December 2020, *seven months after Plaintiff took her exams.* [*Id.*, Ex. A at 19-22].  It is therefore impossible that Larkin would have had knowledge of this letter at the time Mazile used ExamSoft for Larkin's exams.  Mazile tries to downplay this fact by claiming that the letter "did not arise in a vacuum," and merely "solidifie[d] the *magnitude* of complaints, studies, and issues in the months prior, including May of 2020[.]"  [ECF No. 36 at 16 (emphasis in original)].  While Mazile is entitled to all reasonable inferences resolved in her favor, this Court can only take the facts presented to it as true, and Mazile has presented this Court with no possible sources from which Larkin could have had knowledge of the discriminatory impact of ExamSoft.  *See Tropical Soup Corp. v. City of Key W.*, No. 21-10459, 2021 WL 3878250, at *1 (11th Cir. Aug. 31, 2021).

Mazile, in her response to this Motion, wants this Court to accept that it is a "reasonable inference that ExamSoft had received, individually, at least one such complaint prior to May of 2020" and would like to prove this allegation through discovery.  [ECF No. 36 at 16 n.6]. However, "a Plaintiff may not amend a complaint via a response to a motion to dismiss." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 n.6 (S.D. Fla. 2012).  To find, based on her Amended Complaint, that there was at least one complaint to ExamSoft about its software would be to read extratextual facts into the record to cure the Amended Complaint's deficiencies.  This Court will not do so.

Even assuming the ExamSoft software had a discriminatory effect on Mazile, the Amended Complaint alleges no facts that would give rise to even a reasonable inference that Larkin discriminated against Plaintiff *because of* her disability.  Beyond the Senators' letter to ExamSoft, Mazile alleges neither a separate source of knowledge of ExamSoft's discriminatory effect nor any facts that would allow this Court to infer that Larkin engaged in purposeful discrimination against her.  Mazile's assertion that Larkin "discriminated against Plaintiff because of her ADHD and anxiety" is merely a legal conclusion unsupported by any facts in the ADA Complaint, and therefore is insufficient for this Court to find that the third prong of the test to state a claim for ADA discrimination has been met.  [Compl. ¶ 51].

Thus, the facts that Mazile has presented, taken as true, cannot amount to a finding that Larkin discriminated against Plaintiff *because of* her disability.  Count II is therefore **DISMISSED without prejudice**.

### Count III – ADA Failure to Accommodate

Next, Mazile alleges that Larkin "refused to provide reasonable accommodation to Plaintiff, with respect to her renumeration exam."  [Compl. ¶ 59].  Plaintiff, however, fails to

adequately plead all the required elements of an ADA failure-to-accommodate claim, and Count III is therefore DISMISSED without prejudice.

Discrimination under the ADA includes "not making reasonable accommodations to the known physical ... limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business ...." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (citing 42 U.S.C. § 12112(b)(5)(A)).  To state a claim for failure to accommodate under the ADA, "a plaintiff must merely show that (1) [s]he was disabled, (2) [s]he was otherwise qualified, and (3) a reasonable accommodation was not provided."  *Datto v. Fla. Int'l Univ. Bd. of Trustees*, No. 1:20-CV-20360, 2020 WL 3963713, at *9 (S.D. Fla. July 13, 2020).

As discussed above, Mazile has successfully pleaded that she was disabled via her ADHD and anxiety diagnosis, and was a qualified individual under the ADA.  She also has pleaded specific accommodations that could have been provided, including "(a) more time to 'practice' and become familiar with the EM Software and EM Software process; and/or (b) an in-person examination experience; and/or (c) a virtual examination with a live proctor, such as via zoom or any other virtual communication software[.]"  [Compl. ¶ 61].  While this Court does not decide today whether these accommodations would have been "reasonable" under the ADA, it is at least plausible, as pleaded, that these accommodations could have been provided and would be reasonable under the ADA.

However, Plaintiff must show that she made a specific demand for an accommodation. [ECF No. 36 at 11].  "In the academic setting, 'reasonable accommodations' jurisprudence contemplates an interactive process between the student and school, under which both sides have a responsibility to bring the issue of reasonable accommodations front and center.  The initial

burden is on the student, who must identify her disability and make a case for specific accommodations.  Then the school is required to consider the request and make a reasoned decision to grant or deny it." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010) (citations omitted).

Courts in this district are split as to whether a party *must plead* a demand for accommodation, or just show that one was made after discovery.  *Compare Jackson v. Alto Experience, Inc.*, No. 23-CV-22319-RAR, 2024 WL 580354, at *14 (S.D. Fla. Feb. 12, 2024) (describing failure to plead demand for accommodation as "fatal to the prima facie case") with *Datto v. Fla. Int'l Univ. Bd. of Trustees*, No. 1:20-CV-20360-BB, 2020 WL 3963713, at *9 (S.D. Fla. July 13, 2020) ("[T]he Eleventh Circuit has not made this demand an additional pleading requirement to state a claim under the ADA[.]"); *but see Vision Warriors Church, Inc. v. Cherokee Cnty. Bd. of Commissioners*, No. 22-10773, 2024 WL 125969, at *10 (11th Cir. Jan. 11, 2024) (holding, at summary judgment, that plaintiff must establish that he requested a reasonable accommodation under the ADA and Fair Housing Act).  Courts in other districts in the Eleventh Circuit, however, have held that a failure to plead a specific request for accommodation is grounds for dismissal. *Morrison v. Brennan*, No. 8:17-CV-2850-T-60AEP, 2019 WL 5722122, at *4 (M.D. Fla. Nov. 5, 2019) ("Because Plaintiff fails to . . . allege that he requested an accommodation, his claim for failure to accommodate shall be dismissed."); *Puckett v. Bd. of Trustees of First Baptist Church of Gainesville, Inc.*, 17 F. Supp. 3d 1339, 1343 (N.D. Ga. 2014) (dismissing an ADA failure to accommodate claim "[b]ecause Plaintiff fail[ed] to allege that he requested an accommodation[.]").

Thus, because it is clear under binding Circuit case law that Mazile, in order to succeed ultimately on this claim, will have to show that she made a demand for accommodation, and

because other courts have required a plaintiff to plead the demand, this Court finds that failing to plead this essential element of an ADA accommodation claim is grounds for dismissal.[4]  *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (holding that a plaintiff cannot establish a failure to accommodation claim without showing he or she demanded such an accommodation); *see also D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020).

Plaintiff does not allege anywhere that she requested any accommodation from Larkin, so her pleading fails to allege an essential element of ADA failure-to-accommodate claims. Therefore, this count is **DISMISSED without prejudice**.

### Count VII – Violation of the Rehabilitation Act

Finally, Larkin seeks to dismiss Count VII on grounds that it does not receive federal financial assistance "as a whole," because the PPP funds it received were restricted to use for particular purposes.  [ECF No. 24 at 12-13].  Larkin, however, does not discuss whether the Plaintiff's Amended Complaint sufficiently alleges discrimination under the Rehabilitation Act, despite their argument to dismiss the ADA discrimination claim for failure to state a claim under the exact same standard.  Therefore, this Court will first analyze whether Larkin is subject to the RA based on its receipt of federal PPP funds, and then discuss whether Plaintiff stated a viable claim under the RA.

---

[4] Plaintiff claims that it must allege only that "reasonable accommodations were available" and the defendant "has the burden of persuasion on whether an accommodation would impose an undue hardship."  [ECF No. 36 at 17 (citing *Gary v. Ga. Dept. of Human Res.*, 206 Fed. Appx. 849 (11th Cir. 2006))].  Despite the presence of some helpful language for Plaintiff, *Gary* does not say that a Plaintiff need only allege that reasonable accommodations "were available."  Rather, *Gary* dealt with an appeal from a district court's grant of summary judgment and therefore does not discuss the requirements to adequately *plead* a claim of ADA failure to accommodate.  *Gary*, 206 Fed. Appx. at 852.  Further, *Gary* is necessarily qualified by every other case in the Eleventh Circuit which follows it – cases which the Plaintiff conspicuously fails to discuss.

*Is Larkin a "Program or Activity" that Receives "Federal Financial Assistance?"*

Under the RA, "No otherwise qualified individual with a disability in the United States ...

shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal

financial assistance." *J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 926 (11th Cir. 2016)

(emphasis omitted) (citing 29 U.S.C. § 794(a)). "Program or activity" is defined, in relevant part,

by the RA as

> [A]ll of the operations of an entire corporation, partnership, or other private organization,
> or an entire sole proprietorship—
>
> (i)    if assistance is extended to such corporation, partnership, private organization,
>        or sole proprietorship as a whole; or
> (ii)   which is principally engaged in the business of providing education, health care,
>        housing, social services, or parks and recreation

29 U.S.C. § 794(a)(3)(A)(i)-(ii).

The parties devote substantial space in their arguments to whether Larkin, by accepting

PPP funds, accepted this Federal financial assistance "as a whole" under § 794(a)(3)(A)(i).[5]

Defendant relies heavily on *Ariza v. S. Moon Sales, Inc.* for the proposition that acceptance of

---

[5] The United States Senate Report of the RA explained the meaning of Federal Financial
Assistance extended to an entity "as a whole:"

> Federal financial assistance extended to a corporation or other entity "as a whole" refers to
> situations where the corporation receives general assistance that is not designated for a
> particular purpose. Federal financial assistance to the Chrysler Company for the purpose
> of preventing the company from going bankrupt would be an example of assistance to a
> corporation "as a whole." Federal aid which is limited in purpose, *e.g.*, Job Training
> Partnership Act (JPTA) [sic] funds, is not considered aid to the corporation as a whole,
> even if it is used at several facilities and the corporation has discretion to determine which
> of its facilities participates in the program. A grant to a religious organization to enable it
> to extend assistance to refugees would not be assistance to the religious organization as a
> whole if that is only one among a number of activities of the organization.

S. REP. 100-64 at *17 (1987).

federal funds via the Paycheck Protection Program is insufficient to show that a Defendant received federal financial assistance "as a whole," as required by 29 U.S.C. § 794(b)(3)(A)(i).  No. 1:21-CV-23604, 2022 WL 4345136, at *4 (S.D. Fla. Sept. 7, 2022), *report and recommendation adopted*, No. 21-23604-CIV, 2022 WL 4310972 (S.D. Fla. Sept. 19, 2022).  *Ariza* depended on the Senate Report to inform its understanding of the definition of "federal financial assistance extended to such corporation . . . as a whole."  Similarly, Plaintiff relies on *Fernandez v. Bruno Northfleet, Inc.* to argue that any doubt which the Court has as to whether PPP funds are "Federal financial assistance" should be determined based on evidence from discovery.  568 F. Supp. 3d 1294, 1300 (S.D. Fla. 2021) (denying a motion to dismiss a claim under the RA because whether PPP loans are sufficient for purposes of Section 504 is a question better addressed through discovery).

The parties' arguments and § 794(b)(3)(A)(i), however, are irrelevant to the dispute at hand.  *Ariza* focused on the phrase "as a whole" in § 794(b)(3)(A)(i) because the Defendant there was a "corporation that owns and operates a retail apparel and accessory store[,] and therefore fell under § 794(b)(3)(A)(i), not § 794(b)(3)(A)(ii).  2022 WL 4345136, at *4.  Likewise, in *Fernandez*, Defendant was a "corporation that owns and operates retail stores selling bracelets, handbags, shoes, and jewelry[.]" 568 F. Supp. 3d at 1298.  Larkin, however, is a private university that provides Doctoral Pharmaceutical degrees, and thus is not subject to § 794(b)(3)(A)(i), but rather falls under § 794(b)(3)(A)(ii).  [Compl. ¶ 11].

The parties ignore § 794(b)(3)(A)(ii), which clearly extends the definition of "program activity" to any private organization "which is principally engaged in the business of providing education[.]"  29 U.S.C. § 794(b)(3)(A)(ii).  Therefore, the limitation under subsection (i) that Federal financial assistance must be extended to the organization "as a whole" does not apply to

those organizations which are considered "programs or activities" under subsection (ii).  Larkin is a private university which is in the business of providing education, and thus, whether Larkin uses federal financial assistance "as a whole," or not has no bearing on whether its receipt of PPP funds subjects it to the RA.  The Senate Report only discusses Federal financial assistance extended "as a whole" and thus, even if this Court were open to considering legislative history, it would not apply here.

Next, this Court must determine whether the PPP loans to Larkin should be considered "Federal financial assistance" under § 794(a), based on the ordinary and plain meaning of the term.  PPP loans "provide[d] small businesses with funds to pay up to 8 weeks of payroll costs including benefits" during the COVID-19 crisis and were "fully forgiven when used for payroll costs, interest on mortgages, rent, and utilities[.]"   Small Business Paycheck Protection Program, U.S. Department of Treasury, available at https://home.treasury.gov/system/files/136/PPP%20--%20Overview.pdf (accessed July 2, 2024).  In effect, PPP funds were transfers from the federal treasury to businesses to assist with the severe economic fallout resulting from the COVID-19 crisis.  Based on an ordinary reading of "Federal financial assistance," money given from the Federal government to help organizations weather the economic fallout of the pandemic certainly constitutes "Federal financial assistance."   Therefore, Larkin is a "program or activity" that received "Federal financial assistance" and is subject to the RA.

Having determined that Larkin is subject to the RA, the Plaintiff still must state a claim under the Act to survive this Motion to Dismiss.

### *Does Plaintiff State a Discrimination Claim Under the Rehabilitation Act?*

The standard to state a discrimination claim under the RA is the same used for ADA discrimination: to establish a prima facie case, "the plaintiff must demonstrate that [s]he (1) is

disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [her] disability." *J.A.M.*, 646 F. App'x at 926; *Doe v. Univ. of Miami*, 446 F. Supp. 3d 1000, 1010 (S.D. Fla. 2020).

Because the standard for claims brought under ADA discrimination and RA discrimination are *identical*, this Court relies on its analysis in for Count II and determines that Mazile has pleaded insufficient facts to show that Larkin discriminated against her *because of* her disabilities, even when taking all facts in the Amended Complaint as true.  Therefore, Count VII is **DISMISSED without prejudice**.

## IV.     CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** Defendants' Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss Amended Complaint [**ECF No. 34**] is **GRANTED.**

**IT IS FURTHER ORDERED** that Counts IV, V, and VI against Defendant ExamSoft must be heard in binding arbitration.  Arbitration of these three counts is compelled.

**IT IS FURTHER ORDERED** that Count I is DISMISSED with prejudice, and Counts II, III, and VII are DISMISSED without prejudice.  Any amended pleading must comply with Federal Rule of Civil Procedure 15(a)(2).

**DONE AND ORDERED** in the Southern District of Florida on July 22, 2024.

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record